UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

BYRON JACKSON,

Plaintiff,

-against-

Docket No. 20 Civ. 3433 (CS)

THE CITY OF NEW YORK; THE CITY OF NEW
ROCHELLE; NYPD DETECTIVE JAMES ROPENUS,
Shield No. 7636; ESTATE OF DECEASED NYPD
DETECTIVE RAYMOND ABEAR, Shield No. 3740;
ADMINISTRATOR/ADMINISTRATRIX (name presently
unknown) OF THE ESTATE OF DECEASED NYPD
DETECTIVE RAYMOND ABEAR, Shield No. 3740;
NYPD DETECTIVE CHRISTOPHER DELMAR, Shield
No. 4265; NYPD DETECTIVE SERGEANT DOUGLAS
BISCARDI, Shield No. 116; NYPD DETECTIVE
SERGEANT PEARL POON, Shield No. 2530; NYPD
DETECTIVE ANDREW ERATO; NYPD DETECTIVE
DANIEL CRUZ; NEW ROCHELLE DETECTIVE (or other
rank) SEAN KANE; JOHN DOES; RICHARD ROES;
MICHAEL MOES; and PAUL POES,

Defendants.

------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF THE CITY OF NEW ROCHELLE DEFENDANTS' MOTION TO DISMISS

**SOKOLOFF STERN LLP**
*Attorneys for Defendants City of New
Rochelle and Sean Kane*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 200104

Of Counsel:
  Mark A. Radi

## <u>Table of Contents</u>

Table of Authorities.................................................................................................iii

Preliminary Statement ........................................................................................ 1

Statement of Facts ............................................................................................. 1

Standard of Review ........................................................................................... 2

Argument ........................................................................................................... 4

    Point I....................................................................................................... 4
    Plaintiff Failed to State a Plausible Monell Claim Against New Rochelle

    Point II...................................................................................................... 7
    Det. Kane Has Qualified Immunity Because He Was Entitled to Rely on the I-Card

    Point III .................................................................................................. 12
    Plaintiff Failed to State any § 1983 Claim Against Det. Kane

        False Arrest ................................................................................. 13

        Unlawful Stop, Search, and Seizure .......................................... 14

        Due Process ................................................................................ 15

        Equal protection .......................................................................... 16

        Failure to Intervene ................................................................... 17

        Supervisory Liability .................................................................. 17

    Point IV .................................................................................................. 18
    Plaintiff Failed to State Any Claim Against Defendants Under State Law

        NY State Constitution................................................................. 18

        Negligence ................................................................................. 19

        Negligent Hiring/Screening/Retention/Supervision/Training ............... 19

        Intentional Infliction of Emotional Distress ............................. 20

        Negligent Infliction of Emotional Distress................................ 21

Assault and Battery ................................................................................................................... 22

Trespass ..................................................................................................................................... 23

Conversion/Replevin ................................................................................................................ 23

Respondeat Superior ................................................................................................................. 24

POINT V ......................................................................................................................................... 24
THERE IS NO BASIS FOR PUNITIVE DAMAGES

CONCLUSION ................................................................................................................................. 25

CASES

Albright v. Oliver,
  510 U.S. 266 (1994) ............................................................................... 15

Albright v. Rodriguez,
  51 F.3d 1531 (10th Cir. 1995) ................................................................ 11

Alexander v. City of New York,
  2019 WL 5887300 (S.D.N.Y. Nov. 8, 2019) .......................................... 14

Anderson v. Creighton,
  483 U.S. 635 (1987) ................................................................................. 7

Arizona v. Gant,
  556 U.S. 332 (2009) ............................................................................... 15

Ashcroft v. al-Kidd,
  563 U.S. 731 (2011) ................................................................................. 7

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ............................................................................ 2, 3

Bancroft v. City of Mount Vernon,
  672 F. Supp. 2d 391 (S.D.N.Y. 2009) .................................................... 20

Baptiste v. J.C. Penney Co.,
  147 F.3d 1252 (10th Cir. 1998) .............................................................. 11

Bardwil Indus. Inc. v. Kennedy,
  2020 WL 2748248 (S.D.N.Y. May 27, 2020) ........................................ 23

Barham v. Salazar,
  556 F.3d 844 (D.C. Cir. 2009) ............................................................... 11

Barnhardt v. D.C.,
  723 F. Supp. 2d 197 (D.D.C. 2010) ....................................................... 11

Bastuk v. Cty. of Monroe,
  628 F. App'x 4 (2d Cir. 2015) ................................................................ 17

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ................................................................................. 3

Benzman v. Whitman,
    523 F.3d 119 (2d Cir. 2008) ................................................................. 8

Bernard v. United States,
    25 F.3d 98 (2d Cir. 1994) ................................................................... 19

Betts v. Shearman,
    751 F.3d 78 (2d Cir. 2014) ................................................................... 9

Biswas v. Kwait,
    576 F. App'x 58 (2d Cir. 2014) ............................................................ 8

Bohmer v. New York,
    2011 WL 2651872 (S.D.N.Y. June 16, 2011) ...................................... 4

Bradway v. Town of Southampton,
    826 F. Supp. 2d 458 (E.D.N.Y. 2011) ................................................ 20

Brandon v. City of New York,
    705 F. Supp. 2d 261 (S.D.N.Y. 2010) ................................................ 11

Brewton v. City of New York,
    550 F. Supp. 2d 355 .............................................................................. 4

Broughton v. State,
    37 N.Y.2d 451 (1975) ......................................................................... 13

Brown v. City of New York,
    306 F. Supp. 2d 473 (S.D.N.Y. 2004) .................................................. 4

Brown v. Dietz,
    2000 WL 748112 (D. Kan. May 23, 2000) ......................................... 11

Cabral v. City of New York,
    2014 WL 4636433 (S.D.N.Y. Sept. 17, 2014) .................................... 19

Calamia v. City of New York,
    879 F.2d 1025 (2d Cir. 1989) ............................................................. 13

Caldarola v. Calabrese,
    298 F.3d 156 (2002) .............................................................................. 9

Capone v. Marinelli,
    868 F.2d 102 (3d Cir. 1989) ............................................................... 11

Chandrapaul v. City Univ. of N.Y.,
   2016 WL 1611468 (E.D.N.Y. Apr. 20, 2016) ........................................... 16

Charles W. v. Maul,
   214 F.3d 350 (2d Cir. 2000) ................................................................. 8

City of Canton, Ohio v. Harris,
   489 U.S. 378 (1989) ........................................................................... 5

City of Los Angeles v. Heller,
   475 U.S. 796 (1986) ........................................................................... 6

City of Newport v. Fact Concerts, Inc.,
   453 U.S. 247 (1981) ........................................................................... 24

City of St. Louis v. Praprotnik,
   485 U.S. 112 (1988) ........................................................................... 4

Clyburn v. Shields,
   33 F. App'x 552 (2d Cir. 2002) ........................................................... 16

Coleman v. Hauck,
   2012 WL 4480684 (N.D.N.Y. Sept. 26, 2012) ...................................... 14

Collins v. City of Clovis,
   2015 WL 13662642 (D.N.M. Apr. 8, 2015) .......................................... 11

Colon v. Coughlin,
   58 F.3d 865 (2d Cir. 1995) ................................................................. 18

Cooper v. City of New Rochelle,
   925 F. Supp. 2d 588 (S.D.N.Y. 2013) ........................................ 14, 15, 24

Csoka v. Cty. of Suffolk,
   85 F. Supp. 2d 117 (E.D.N.Y. 2000) ................................................... 21

Cty. of Sacramento v. Lewis,
   523 U.S. 833 (1998) ........................................................................... 15

D'Angelo-Fenton v. Town of Carmel,
   470 F. Supp. 2d 387 (S.D.N.Y. 2007) ................................................. 20

Davis v. City of New York,
   959 F. Supp. 2d 324 (S.D.N.Y. 2013) ................................................. 19

Deanda v. Hicks,
    137 F. Supp. 3d 543 (S.D.N.Y. 2015) ........................................................ 21, 24

Dellutri v. Vill. of Elmsford,
    895 F. Supp. 2d 555 (S.D.N.Y. 2012) ............................................................... 4

Dore v. Wormley,
    690 F. Supp. 2d 176 (S.D.N.Y. 2010) ............................................................. 23

Dowtin v. O'Neill,
    2019 WL 7496574 (E.D.N.Y. Jan. 9, 2019) ...................................................... 2

Drimal v. Tai,
    786 F.3d 219 (2d Cir. 2015) .............................................................................. 8

Ehrlich v. Town of Glastonbury,
    348 F.3d 48 (2d Cir. 2003) .............................................................................. 24

Ellis v. Gannon,
    2011 WL 5513184 (E.D.N.Y. Nov. 10, 2011) ................................................. 20

Escalera v. Lunn,
    361 F.3d 737 (2d Cir. 2004) .............................................................................. 9

Farag v. United States,
    587 F. Supp. 2d 436 (E.D.N.Y. 2008) ............................................................. 16

Feathers v. Aey,
    319 F.3d 843 (6th Cir. 2003) ........................................................................... 11

Felmine v. City of New York,
    2012 WL 1999863 (E.D.N.Y. June 4, 2012) .................................................... 18

Figueroa v. Mazza,
    59 F. Supp. 3d 481 (E.D.N.Y. 2014) ............................................................... 17

Figueroa v. Mazza,
    825 F.3d 89 (2d Cir. 2016) .............................................................................. 22

Flores v. City of Mount Vernon,
    41 F. Supp. 2d 439 (S.D.N.Y. 1999) ............................................................... 18

Freedom Holdings, Inc. v. Spitzer,
    357 F.3d 205 (2d Cir. 2004) ............................................................................ 16

Garcia v. Does,
  779 F.3d 84 (2d Cir. 2015) ..................................................................... 8

Goldphin v. City of New York,
  2011 WL 4375679 (S.D.N.Y. Sept. 19, 2011) ......................... 9, 10, 13, 14

Graham v. Connor,
  490 U.S. 386 (1989) ............................................................................... 22

Gray v. Weselmann,
  737 F. App'x 30 (2d Cir. 2018) ................................................. 19, 20, 21

Grullon v. City of New Haven,
  720 F.3d 133 (2d Cir. 2013) ................................................................... 17

Haddock v. City of New York,
  75 N.Y.2d 478 (1990) ............................................................................. 20

Hardiman v. Ford,
  41 F.3d 1510 (7th Cir. 1994) .................................................................. 11

Harlow v. Fitzgerald,
  457 U.S. 800 (1982) ................................................................................. 7

Harris v. Cty. of Nassau,
  581 F. Supp. 2d 351 (E.D.N.Y. 2008) ................................................... 15

Hershey v. Goldstein,
  938 F. Supp. 2d 491 (S.D.N.Y. 2013) ................................................... 13

Higginbotham v. Sylvester,
  218 F. Supp. 3d 238 (S.D.N.Y. 2016) ................................................... 13

Howell v. N.Y. Post Co., Inc.,
  81 N.Y.2d 115 (1993) ............................................................................. 21

Ikezi v. City of New York,
  2017 WL 1233841 (E.D.N.Y. Mar. 31, 2017) ....................................... 24

In re Dayton,
  786 F. Supp. 2d 809 (S.D.N.Y. 2011) ..................................................... 5

Jackson v. City of New York,
  939 F. Supp. 2d 219 (E.D.N.Y. 2013) ................................................ 5, 17

Jackson v. City of New York,
  2014 WL 1010785 (E.D.N.Y. Mar. 17, 2014) ........................................................ 21

Jackson v. N.Y. Univ. Downtown Hosp.,
  69 A.D.3d 801 (2d Dep't 2010) .......................................................................... 20

Jaegly v. Couch,
  439 F.3d 149 (2d Cir. 2006) .............................................................................. 13

Jean v. Cty. of Nassau,
  2020 WL 1244786 (E.D.N.Y. Mar. 16, 2020) ...................................................... 16

Jean-Laurent v. Hennessy,
  2008 WL 3049875 (E.D.N.Y. Aug. 1, 2008) ........................................................ 15

Jenkins v. City of New York,
  478 F.3d 76 (2d Cir. 2007) ................................................................................ 23

Jocks v. Tavernier,
  316 F.3d 128 (2d Cir. 2003) .............................................................................. 19

Johnson v. City of New York,
  2017 WL 1476139 (E.D.N.Y. Apr. 24, 2017) ................................................. Passim

Johnson v. City of New York,
  2020 WL 2732068 (S.D.N.Y. May 26, 2020) ................................................. 14, 15

Jones v. Parmley,
  465 F.3d 46 (2d Cir. 2006) ................................................................................ 12

Jouthe v. City of New York,
  2009 WL 701110 (E.D.N.Y. Mar. 10, 2009) ........................................................ 22

Kimble v. Kingston City Sch. Dist.,
  792 F. App'x 80 (2d Cir. 2019) ............................................................................ 5

Ladoucier v. City of New York,
  2011 WL 2206735 (S.D.N.Y. June 6, 2011) .................................................. 21, 22

Lauer v. City of New York,
  240 A.D.2d 543 (2d Dep't 1997) ........................................................................ 20

Lawrence v. Town of Brookhaven Dep't of Hous.,
  393 F. App'x 791 (2d Cir. 2010) .......................................................................... 6

Llerando-Phipps v. City of New York,
   390 F. Supp. 2d 372 (S.D.N.Y. 2005) ............................................................ 20

Marinaccio v. Town of Clarence,
   20 N.Y.3d 506 (2013) ..................................................................................... 24

McAdam v. Suffolk Cty. Police Dep't,
   2017 WL 3206322 (E.D.N.Y. July 26, 2017) ................................................. 18

McKenna v. Wright,
   386 F.3d 432 (2d Cir. 2004) ............................................................................. 8

McLean v. City of New York,
   12 N.Y.3d 194 (2009) ..................................................................................... 20

Medina v. City of New York,
   102 A.D.3d 101 (1st Dep't 2012) .................................................................... 19

Miller v. Terrillion,
   391 F. Supp. 3d 217 (E.D.N.Y. 2019) ....................................................... 16, 17

Mitchell v. Forsyth,
   472 U.S. 511 (1985) .......................................................................................... 8

Monell v. Dep't of Soc. Servs. of City of N.Y.,
   436 U.S. 658 (1978) .......................................................................................... 4

Morales v. City of New York,
   209 F. App'x 75 (2d Cir. 2006) ........................................................................ 9

Munafo v. Metro. Transp. Auth.,
   285 F.3d 201 (2d Cir. 2002) ............................................................................. 8

Norwood v. Mason,
   524 F. App'x 762 (2d Cir. 2013) .................................................................... 13

Oklahoma City v. Tuttle,
   471 U.S. 808 (1985) .......................................................................................... 4

Okoh v. Sullivan,
   2011 WL 672420 (S.D.N.Y. Feb. 24, 2011) .................................................. 16

Oteri v. Vill. of Pelham,
   100 A.D.3d 725 (2d Dep't 2012) .................................................................... 19

Pani v. Empire Blue Cross Blue Shield,
     152 F.3d 67 (2d Cir. 1998) ........................................................................ 2

Pearson v. Callahan,
     555 U.S. 223 (2009) .................................................................................. 7

Pembaur v. City of Cincinnati,
     475 U.S. 469 (1986) .................................................................................. 4

Pena v. DePrisco,
     432 F.3d 98 (2d Cir. 2005) ...................................................................... 15

Plair v. City of New York,
     789 F. Supp. 2d 459 (S.D.N.Y. 2011) .................................................. 4, 5

Plumhoff v. Rickard,
     572 U.S. 765 (2014) .................................................................................. 7

Prasad v. City of N.Y.,
     2009 WL 1119412 (S.D.N.Y. Apr. 24, 2009) ........................................ 16

Prophete v. City of New York,
     2008 WL 4185876 (E.D.N.Y. Sept. 9, 2008) ........................................... 5

Pub. Adm'r, Bronx Cty. v. City of New York,
     271 A.D.2d 220 (1st Dep't 2000) ........................................................... 20

Rao v. City of New York,
     2018 WL 1582289 (E.D.N.Y. Mar. 29, 2018) .............................. 9, 11, 14

Regeda v. City of New York,
     2012 WL 7157703 (E.D.N.Y. Sept. 7, 2012) ......................................... 21

Reichle v. Howards,
     566 U.S. 658 (2012) .................................................................................. 7

Reyes v. Cty. of Suffolk,
     995 F. Supp. 2d 215 (E.D.N.Y. 2014) .................................................... 15

Rockland Vending Corp. v. Creen,
     2009 WL 2407658 (S.D.N.Y. Aug. 4, 2009) .......................................... 16

Rogers v. Powell,
     120 F.3d 446 (3d Cir. 1997) .................................................................... 11

Roth v. Jennings,
    489 F.3d 499 (2d Cir. 2007) ........................................................................ 2

Rubio v. City of New York,
    2005 WL 1072713 (E.D.N.Y. Apr. 22, 2005) .......................................... 17

Ruggiero v. Way,
    2020 WL 5126112 (S.D.N.Y. Aug. 31, 2020) .......................................... 18

Santiago v. City of New York,
    2009 WL 2734667 (E.D.N.Y. Aug. 18, 2009) ........................................... 5

Santos v. N.Y.C.,
    847 F. Supp. 2d 573 (S.D.N.Y. 2012) ............................................... 5, 24

Saucier v. Katz,
    533 U.S. 194 (2001) ....................................................................... 9

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003) ........................................................... 10

Singer v. Fulton Cty. Sheriff,
    63 F.3d 110 (2d Cir. 1995) ........................................................... 13

Sira v. Morton,
    380 F.3d 57 (2d Cir. 2004) ............................................................. 2

Tango v. Tulevich,
    61 N.Y.2d 34 (1983) .................................................................... 20

Terry v. Ohio,
    392 U.S. 1 (1968) ...................................................................... 14

Tianbo Huang v. iTV Media, Inc.,
    79 F. Supp. 3d 458 (E.D.N.Y. 2015) ................................................ 24

Trivedi v. Golub,
    46 A.D.3d 542 (2d Dep't 2007) ...................................................... 24

Truman v. Brown,
    434 F. Supp. 3d 100 (S.D.N.Y. 2020) .......................................... 21, 22

United States v. Colon,
    250 F.3d 130 (2d Cir. 2001) ........................................................... 9

United States v. Valez,
  796 F.2d 24 (2d Cir. 1986) ........................................................................................... 10

Valverde v. Folks,
  2020 WL 5849515 (S.D.N.Y. Sept. 30, 2020) ..................................................... 17, 18

Velez v. City of New York,
  730 F.3d 128 (2d Cir. 2013) ......................................................................................... 20

Watkins v. Ruscitto,
  2016 WL 3748498 (S.D.N.Y. July 11, 2016) ....................................................... 9, 10

Weyant v. Okst,
  101 F.3d 845 (2d Cir. 1996) ......................................................................................... 13

White v. Pauly,
  137 S. Ct. 548 (2017) ................................................................................................. 7, 9

Wood v. Moss,
  572 U.S. 744 (2014) ......................................................................................................... 8

Zachary v. City of Newburgh,
  2014 WL 1508705 (S.D.N.Y. Apr. 1, 2014) ............................................................... 5

RULES

Fed. R. Civ. P. 12(f) ........................................................................................................ 24

Plaintiff's complaint is a stew comprised of a medley of federal and state law claims arising out of his temporary stop and detention by the New Rochelle Police Department (NRPD) based on an Investigation-card (I-card) issued by the New York City Police Department (NYPD) declaring probable cause existed to arrest plaintiff for rape. Many of plaintiff's claims are ill-fitted to the situation and inapplicable to the City of New Rochelle ("New Rochelle") and NRPD Det. Kane (collectively "New Rochelle defendants") specifically.[1]

Plaintiff's vague and conclusory allegations of municipal liability cannot state a claim against New Rochelle under § 1983. Det. Kane should be dismissed from this action because his reasonable reliance on the NYPD I-card entitles him to qualified immunity. Finally, plaintiff failed to state any underlying claims against the New Rochelle defendants under either federal or state law warranting dismissal of this action against them.

**STATEMENT OF FACTS**

Plaintiff is an African-American male. (Ex. A ¶ 7.) On February 4, 2019, NYPD officers stopped plaintiff in Queens and questioned him about the assault of a woman by a black male wearing a coat similar to his that had occurred the night before. (Id. ¶¶ 14, 16.) The NYPD officers took photos of plaintiff and his identification and then allowed him to leave. (Id. ¶¶ 17-18.)

On February 8, 2019, Det. Kane stopped plaintiff in New Rochelle and informed him that there was a warrant for his arrest. (Id. ¶¶ 20-22.) Det. Kane knew plaintiff from a prior incident. (Id. ¶ 21.) While plaintiff claims there was no warrant, he acknowledges that Det. Kane stopped

---

[1] Plaintiff does not assert against the New Rochelle defendants claims for malicious prosecution and abuse of process under federal or state law, fabrication of evidence, or equal protection in violation of the State constitution. (Ex. A ¶¶ 53, 82, nn.2, 3, 4, 5.)

him based on an I-card that the NYPD had issued.[2]  (Id. ¶¶ 23-26.)  The I-card pictured plaintiff

and identified him by name, address, and physical description; it stated: "WANTED FOR RAPE:

PERPETRATOR – PROBABLE CAUSE TO ARREST."  (Id.; Ex. B.)[3]

Det. Kane checked plaintiff's identification to determine whether there was a warrant.  (Ex.

A ¶ 27.)  Plaintiff (incorrectly) speculates Det. Kane did not contact the NYPD prior to acting on

the I-card.  (Id. ¶¶ 29-31.)  Det. Kane then confiscated a boxcutter on plaintiff's person and

handcuffed plaintiff; NRPD Officer Moe then transported plaintiff to NRPD headquarters.  (Id. ¶¶

28, 32, 35.)  Plaintiff was placed in an NRPD cell for two hours until he was picked up by NYPD

officers and taken to NYPD headquarters.  (Id. ¶¶ 34, 36.)  All of plaintiff's property, including

his boxcutter, were transferred to NYPD at that time.  (Radi Decl. ¶ 6.)  Plaintiff admits that, at the

time of their involvement in the incident, Det. Kane and Officers Moe and Poe were acting "in the

course and scope of their duties and functions as officers" of NRPD.  (Ex. A ¶¶ 12-13.)[4]

That was the end of New Rochelle defendants' involvement in this matter.  (Id. ¶¶ 37-51.)

NPYD ultimately released plaintiff.  Upon information and belief, NYPD did not charge him with

any crimes.  (Id. ¶¶ 44-45.)

## STANDARD OF REVIEW

The pleading standard "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Mere "labels and

---

[2] "An I-card is a tool used frequently by the New York City Police Department to arrest a suspect who has an open complaint pending against him in lieu of an arrest warrant signed by a judge after charges have been signed." Dowtin v. O'Neill, 2019 WL 7496574, at *1 n.3 (E.D.N.Y. Jan. 9, 2019).  The NYPD issues I-cards to alert other officers of probable cause to arrest a subject. Johnson v. City of New York, 2017 WL 1476139, at *2 (E.D.N.Y. Apr. 24, 2017).

[3] The Court can consider this document in deciding this motion as it is referenced in paragraphs 23-25 of the complaint and because it is integral to the complaint and plaintiff relies on it. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998).

[4] The officers are sued only in their individual capacity.  (Id.)

conclusions" or "naked assertion[s]" devoid of "further factual enhancement" do not suffice.  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, fail to state a claim.  Id. (citing Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Id.  (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).  The complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  To meet this standard, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible."  Id. at 570.  "When a complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679.  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  Id.

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

<u>**PLAINTIFF FAILED TO STATE A PLAUSIBLE MONELL CLAIM AGAINST NEW ROCHELLE**</u>

Plaintiff failed to establish liability of New Rochelle under <u>Monell</u>. "It is black-letter law that a municipality may not be held liable for its employees' constitutional violations under a *respondeat superior* theory." <u>Brewton v. City of New York</u>, 550 F. Supp. 2d 355, 368-69 (<u>citing</u> <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 694 (1978)). Rather, a plaintiff must establish that the municipality itself was at fault. <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 810 (1985). Thus, to prevail on a claim against a municipality under § 1983, plaintiff must demonstrate the alleged constitutional violation resulted from a specific municipal policy, practice, custom, or act of a "decisionmaker [who] possesses final authority to establish municipal policy with respect to the action ordered." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986); <u>Monell</u>, 436 U.S. at 694; <u>Tuttle</u>, 471 <u>Brown v. City of New York</u>, 306 F. Supp. 2d 473, 477 (S.D.N.Y. 2004).

Isolated incidents, in which no municipal policymakers are involved, will not suffice to establish a municipal policy or custom. <u>Monell</u>, 436 U.S. at 694; <u>Tuttle</u>, 471 U.S. at 823-24. It is "well established that a single incident does not give rise to an unlawful practice by subordinate officials 'so permanent and well-settled as to constitute 'custom or usage.''" <u>Plair v. City of New York</u>, 789 F. Supp. 2d 459, 470 (S.D.N.Y. 2011) (<u>quoting</u> <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988)). Nor can "a custom or policy [] be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." <u>Dellutri v. Vill. of Elmsford</u>, 895 F. Supp. 2d 555, 565 (S.D.N.Y. 2012).

"Boilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of the plaintiff's rights are insufficient." <u>Bohmer v. New York</u>, 2011

WL 2651872, at *3 (S.D.N.Y. June 16, 2011).  Indeed, it is well settled that plaintiffs "must do more than merely assert the existence of a municipal policy or custom leading to a rights violation" – it "must actually allege facts tending to support, at least circumstantially, the inference that the complained-of actions were pursuant to a municipal policy or custom."  Kimble v. Kingston City Sch. Dist., 792 F. App'x 80, 82 (2d Cir. 2019); In re Dayton, 786 F. Supp. 2d 809, 823 (S.D.N.Y. 2011); Plair, 789 F. Supp. 2d at 469 ("boilerplate claims do not rise to the level of plausibility"); Santiago v. City of New York, 2009 WL 2734667, at *3 (E.D.N.Y. Aug. 18, 2009) ("In light of [Iqbal] and [Twombly], it is now clear that such boilerplate claims do not rise to the level of plausibility."); Prophete v. City of New York, 2008 WL 4185876, at *6 (E.D.N.Y. Sept. 9, 2008), aff'd, 383 F. App'x 77 (2d Cir. 2010).

The failure to train or supervise employees may be the basis of § 1983 liability against a municipality only in "limited circumstances."  City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989).  "To prevail on a claim for negligent hiring, training, supervision, or retention, a plaintiff must prove that a municipality's failure to properly train, hire, retain, or supervise its police officers in a relevant respect evidences a deliberate indifference to the rights of its inhabitants."  Jackson v. City of New York, 939 F. Supp. 2d 219, 234 (E.D.N.Y. 2013).  "[C]onclusory allegations that a municipality failed to train and supervise its employees are insufficient to state a Monell claim absent supporting factual allegations."  Zachary v. City of Newburgh, 2014 WL 1508705, at *5 (S.D.N.Y. Apr. 1, 2014); Santos v. N.Y.C., 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012).  Rather, "a plaintiff ultimately must identify a specific deficiency in the [municipality's] training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation."  In re Dayton, 786 F. Supp. 2d at 821.

Plaintiff's conclusory allegations of municipality liability fall far short of stating a plausible claim against New Rochelle. The complaint asserts no facts to buttress its conclusory assertions that New Rochelle "had de facto policies, practices, customs and usages" of 1) "failing to properly train, screen, supervise, or discipline employee police officers," 2) "encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct through the fabrication of false accounts and evidence and/or through 'the blue wall of silence,'"[5] 3) "treating i-cards or other similar requests within or between law enforcement agencies to apprehend an individual as though they were judicially signed arrest warrants," and 4) "making arrests based solely upon the issuance of i-cards by the NYPD . . . without making any inquiry whatsoever as to the purported probable cause justification for the warrantless arrests." (Ex. A ¶¶ 59-61, 63-64.) Rather, the pleading makes clear that all of the claims against New Rochelle are based only on this single encounter between plaintiff and two of its police officers.[6] (Id. ¶¶ 20-36.) While plaintiff also peppers in conclusory allegations of failure to train, supervise, etc., the complaint contains no specific facts to support them or identifying any deficiencies or explaining how they caused any constitutional deprivations. Plaintiff failed to meet his burden of asserting a plausible Monell claim against New Rochelle warranting dismissal of all § 1983 claims against it.[7]

---

[5] Though plaintiff includes New Rochelle in this allegation, it is not applicable as there are no allegations that the New Rochelle defendants fabricated any evidence and plaintiff withdrew such claim against them.

[6] Det. Kane and Officer Moe are not (and plaintiff does not allege) final policymakers for New Rochelle.

[7] Additionally, there is no Monell claim absent an underlying violation. As set forth below, plaintiff failed to state any plausible federal claim. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Lawrence v. Town of Brookhaven Dep't of Hous., 393 F. App'x 791, 794 (2d Cir. 2010).

**DET. KANE HAS QUALIFIED IMMUNITY BECAUSE HE WAS ENTITLED TO RELY ON THE I-CARD**

Det. Kane is immune from suit under § 1983 because it was objectively reasonable for him to stop and detain plaintiff based on the NYPD-issued I-card. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Id. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff v. Rickard, 572 U.S. 765, 779 (2014). Instead, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." Reichle v. Howards, 566 U.S. 658, 665 (2012). Clearly established law, therefore, "must be particularized to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id.

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). "The Supreme Court has 'repeatedly stressed the importance of resolving immunity questions at the earliest possible stage [of the] litigation.'" Drimal v. Tai, 786 F.3d 219, 225 (2d Cir. 2015) (quoting Wood v. Moss, 572 U.S. 744, 755 n.4 (2014)). The Second Circuit has held that "qualified immunity *can* be established by the facts alleged in a complaint" and agreed that it "should be resolved when possible on a motion to dismiss before the commencement of discovery to avoid subjecting public officials to time consuming and expensive discovery procedures." Garcia v. Does, 779 F.3d 84, 97 (2d Cir. 2015) (emphasis in original) (internal quotation marks and citations omitted) (citing Wood, 572 U.S. at 757; Mitchell, 472 U.S. at 526). "If the complaint does not allege a cognizable federal claim, the defendant is entitled to have his qualified-immunity motion granted promptly as a matter of law." Munafo v. Metro. Transp. Auth., 285 F.3d 201, 211 (2d Cir. 2002).

"At the motion to dismiss stage . . . a defendant is entitled to the shield of qualified immunity if the allegations of the complaint fail to state a claim that his conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Charles W. v. Maul, 214 F.3d 350, 356-57 (2d Cir. 2000). Thus, qualified immunity is appropriately granted on a motion to dismiss where it is based on facts appearing on the face of the complaint and documents incorporated in it by reference. Biswas v. Kwait, 576 F. App'x 58, 58 (2d Cir. 2014); Benzman v. Whitman, 523 F.3d 119, 125 (2d Cir. 2008) (quoting McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)).

Plaintiff failed to allege a violation of clearly established rights. While the general right to be free of arrest without probable cause is clearly established, the Supreme Court has condemned

defining rights at such a high level of generality, White, 137 S. Ct. at 552, and it is not clearly established that an officer can be liable for a constitutional violation for stopping and temporarily detaining a suspect based on an I-card issued by another law enforcement agency. To the contrary, officers are entitled to rely on assertions of probable cause by other agencies in making an arrest and are often afforded qualified immunity when they do even if probable cause is ultimately lacking.

It is well-known that a police officer is entitled to qualified immunity even if there is only "arguable probable cause" to arrest, "which exists if it was objectively reasonable for the officer to believe that there was probable cause, or if officers of reasonable competence could disagree as to the existence of probable cause." Morales v. City of New York, 209 F. App'x 75, 76 (2d Cir. 2006) (citation omitted); Betts v. Shearman, 751 F.3d 78, 81 (2d Cir. 2014); Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). Moreover, officers have immunity for reasonable mistakes. Saucier v. Katz, 533 U.S. 194, 206 (2001); Caldarola v. Calabrese, 298 F.3d 156, 162 (2002).

It is also settled that "an arrest may be supported by probable cause even if the arresting officer does not possess independent, firsthand knowledge of the suspect's alleged criminal wrongdoing." Johnson, 2017 WL 1476139, at *5. "Under the collective knowledge doctrine or 'fellow officer' rule, 'an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." Id. (quoting United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001)) (citing cases); see also Rao v. City of New York, 2018 WL 1582289, at *6 (E.D.N.Y. Mar. 29, 2018); Watkins v. Ruscitto, 2016 WL 3748498, at *6-7 (S.D.N.Y. July 11, 2016); Goldphin v. City of New York, 2011 WL 4375679, at *2 (S.D.N.Y. Sept. 19, 2011).

"The policy concern underlying the collective knowledge doctrine is that the complexities of modern law enforcement work . . . require that officers be permitted to rely on the accuracy of information provided by their colleagues." Id. (citing United States v. Valez, 796 F.2d 24, 28 (2d Cir. 1986)); Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003).

It is, therefore, well-established that where an officer "is acting based upon the knowledge of a fellow officer, *the proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed* or the vouching officer acted reasonably." Id. (citations omitted) (emphasis added); Watkins, 2016 WL 3748498, at *7; Goldphin, 2011 WL 4375679, at *2. This doctrine further "shields arresting officers when the basis of probable cause is later found false or mistaken." Goldphin, 2011 WL 4375679, at *2 (citing Valez, 796 F.2d at 28 (holding undisclosed information that undermines probable cause cannot be imputed to arresting officer). "In a chain of communication between officers, responsibility for the accuracy of probable cause remains with the officer that provided the affirmation, not the arresting officer." Id. (citing Savino, 331 F.3d at 74 ("the doctrine has traditionally been applied to *assist* officers in establishing probable cause – not to impute bad faith to one member of an enforcement team based on another member's knowledge) (emphasis in original)).

United States v. Hensley is apt here. The Supreme Court found unpersuasive the argument that "police can more justifiably rely on a report that a magistrate has issued a warrant than on a report that another law enforcement agency has simply concluded that it has a reasonable suspicion sufficient to authorize an investigatory stop." 469 U.S. 221, 232 (1985). It found "law enforcement interests promoted by allowing one department to make investigatory stops based upon another department's bulletins or flyers are considerable, while the intrusion on personal security is minimal. The same interests that weigh in favor of permitting police to make

a <u>Terry</u> stop to investigate a past crime support permitting police in other jurisdictions to rely on flyers or bulletins in making stops to investigate past crimes." <u>Id.</u> The Supreme Court concluded that if a wanted flyer is issued in the absence of reasonable suspicion, then a stop in objective reliance on it may violate the Fourth Amendment, but, "In such a situation of course, the officers making the stop may have a good-faith defense to any civil suit. It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it." <u>Id.</u> at 232-33 (citing cases).

Accordingly, Courts of Appeals and district courts regularly hold that where an arresting officer reasonably relies on the collective knowledge doctrine, he will be accorded qualified immunity. <u>See</u> <u>Rao</u>, 2018 WL 1582289, at *7 (granting qualified immunity to arresting officers because there was arguable probable cause to arrest based on I-card); <u>Johnson</u>, 2017 WL 1476139, at *7 ("Had probable cause been absent, Williams might nevertheless be able to avoid liability for arresting plaintiff if he reasonably relied upon an I-card or other communication from a supervisor or fellow officer."); <u>Brandon v. City of New York</u>, 705 F. Supp. 2d 261, 270-71 (S.D.N.Y. 2010) (granting immunity to officers who relied on fellow officer's signal to arrest); <u>Rogers v. Powell</u>, 120 F.3d 446, 455 (3d Cir. 1997) (officer who made arrest based on statements by fellow officers immune from suit); <u>Hardiman v. Ford</u>, 41 F.3d 1510 (7th Cir. 1994) ("So long as the officer's reliance on the 'collective knowledge' is objectively reasonable, he will be accorded qualified immunity."); <u>Capone v. Marinelli</u>, 868 F.2d 102, 104 (3d Cir. 1989) (arresting officer who reasonably relies on arrest warrant bulletin from another jurisdiction is immune from liability); <u>Collins v. City of Clovis</u>, 2015 WL 13662642, at *4 (D.N.M. Apr. 8, 2015) (granting immunity to officer because "he had the right to rely" on information from other officer).[8]

---

[8] <u>See also</u> <u>Barham v. Salazar</u>, 556 F.3d 844, 850 (D.C. Cir. 2009) ("officer may rely on another officer's determination of probable cause to make an arrest"); <u>Feathers v. Aey</u>, 319 F.3d 843, 851 (6th Cir. 2003) (officers who

Here, plaintiff acknowledged Det Kane arrested him based on an NYPD-issued I-card. (Ex. A ¶¶ 23-25; Ex. B.)  The I-card stated plaintiff was wanted for a rape that had occurred less than three weeks earlier and that there was probable cause to arrest.  (Id.)  The flyer identified plaintiff by name and provided his physical description, date of birth, and address.  (Id.)  Det. Kane also knew plaintiff from a prior interaction.  (Ex. A ¶ 21.)  Though plaintiff (wrongly) speculates "on information and belief" that Det. Kane did not call NYPD, he does acknowledge that Det. Kane ran his license "to make sure if there was or was not a warrant" before handcuffing him.  (Id. ¶¶ 27-31.) The alleged facts demonstrate that Det. Kane stopped and took temporary custody of plaintiff based on the NYPD-issued I-card declaring probable cause to arrest him for rape, and that he acted reasonably in relying on it.  Accordingly, the Court should grant him qualified immunity and dismiss him from this action.[9]

## POINT III

## PLAINTIFF FAILED TO STATE ANY § 1983 CLAIM AGAINST DET. KANE

Plaintiff's assortment of federal claims should be dismissed for failure to state a plausible claim.

conducted Terry stop immune from § 1983 liability where they reasonably relied on information from dispatcher); Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1260 (10th Cir. 1998) ("An officer who is called to the scene to conduct a search incident to arrest is not required to reevaluate the arresting officer's probable cause determination in order to protect herself from personal liability.") (citing cases); Albright v. Rodriguez, 51 F.3d 1531, 1536 (10th Cir. 1995) ("Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and to develop probable cause for an arrest"); Barnhardt v. D.C., 723 F. Supp. 2d 197, 216 (D.D.C. 2010) (officer entitled to rely on another officer's signal and not obligated to make independent determination of probable cause); Brown v. Dietz, 2000 WL 748112, at *4 (D. Kan. May 23, 2000) ("In assessing whether there exists sufficient reasonable suspicion to justify an investigative stop, law enforcement officers are entitled to rely upon the information contained in dispatch bulletins, 'wanted' flyers, or directly relayed to them by fellow officers."), aff'd, 12 F. App'x 848 (10th Cir. 2001).

[9] The Court should also dismiss plaintiff's state law claims against Det. Kane on this basis because New York common law "grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without reasonable basis."  Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006).  Plaintiff does not allege any bad faith by Det. Kane.  Rather, he reasonably relied on the NYPD I-card.

**False Arrest**

To state a plausible false arrest/imprisonment claim, plaintiff must show defendants intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not privileged. Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (quoting Broughton v. State, 37 N.Y.2d 451, 456 (1975)).[10]

"There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." Id. at 118-19. Probable cause is a "complete defense" to a false arrest claim. Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "[P]robable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989); Norwood v. Mason, 524 F. App'x 762, 764 (2d Cir. 2013).

Probable cause is evaluated under an objective standard based only on the facts known to the officer as of the time of arrest. Higginbotham v. Sylvester, 218 F. Supp. 3d 238, 241 (S.D.N.Y. 2016). As outlined above, under the collective knowledge doctrine, an arresting officer need not have firsthand knowledge of probable cause to arrest; rather, he may reasonably rely on representations of probable cause by other officers. Johnson, 2017 WL 1476139, at *5. In that situation, "the proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed." Id.; Goldphin, 2011 WL 4375679, at *3 ("The only concern of the Court . . . is whether [the officer's] actions were reasonable – not whether the actions of his superior officers were reasonable or even whether probable cause was properly established."). Indeed, the officer is not required to make an independent determination of

---

[10] False arrest and false imprisonment claims are analyzed the same. Hershey v. Goldstein, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013).

probable cause to justify arrest.  Goldphin, 2011 WL 4375679, at *3 ("Requiring [the officer] to make an independent determination of probable cause would defeat the policy underlying the collective knowledge doctrine.").

As previously discussed, the complaint notes that in stopping and detaining plaintiff Det. Kane acted solely on the NYPD I-card that stated he was wanted for a rape that occurred less than three weeks earlier.  (Ex. B.)  Det. Kane was familiar with plaintiff and the I-card described him. Plaintiff also acknowledges that Det. Kane ran his license to confirm he was wanted before handcuffing him.  (Ex. A ¶¶ 21-31.)  Det. Kane is not charged with bad faith or improper motive; he is accused only of acting on another officer's determination of probable cause and directive to apprehend.  His reliance was reasonable under the circumstances warranting dismissal of this claim against him.  Rao, 2018 WL 1582289, at *6 ("[The officers] were entitled to rely on an I-card as providing probable cause for [plaintiff's] arrest."); Johnson, 2017 WL 1476139, at *6 ("Pursuant to the collective knowledge doctrine or "fellow officer" rule, [Officer] Williams was entitled to rely on this information to conclude that he had probable cause to arrest plaintiff.").

**Unlawful Stop, Search, and Seizure**[11]

It is well-settled that an investigating officer may briefly detain an individual for questioning upon reasonable suspicion that criminal activity may be afoot.  Terry v. Ohio, 392 U.S. 1, 30 (1968); Johnson v. City of New York, 2020 WL 2732068, at *6 (S.D.N.Y. May 26, 2020); Cooper v. City of New Rochelle, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013).  As part of a Terry stop, officers may conduct a pat-down frisk to search for and seize weapons.  Cooper, 925 F. Supp. 2d at 608; Alexander v. City of New York, 2019 WL 5887300, at * 3 (S.D.N.Y. Nov. 8, 2019).  An officer may further conduct a warrantless search of the person incident to a lawful arrest

---

[11] To the extent plaintiff's seizure claim is based on the seizure of his person, it is redundant of his false arrest claim. Coleman v. Hauck, 2012 WL 4480684, at *7 n.24 (N.D.N.Y. Sept. 26, 2012).

and remove any weapons found on the person. Arizona v. Gant, 556 U.S. 332, 338 (2009); Johnson, 2020 WL 2732068, at *7; Jean-Laurent v. Hennessy, 2008 WL 3049875, at *12 (E.D.N.Y. Aug. 1, 2008) (Bianco, J.).

Plaintiff's admission that NYPD had issued an I-card directing other law enforcement agencies to arrest him for rape based on NYPD previously determined probable cause gave Det. Kane at least reasonable suspicion to stop plaintiff, frisk him for weapons, and confiscate the boxcutter in his possession (since it could be considered a weapon). Additionally, Det. Kane was permitted to search plaintiff's person incident to arrest because the I-card made it objectively reasonable for him to believe there was probable cause to do so. These claims should be dismissed.

**Due Process**

To prevail on a procedural due process claim, plaintiff must allege he was deprived a protected property or liberty interest without notice and an opportunity to be heard. Reyes v. Cty. of Suffolk, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014). To establish a violation of substantive due process, plaintiff must allege government action "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Plaintiff does not allege any facts to support these claims. Det. Kane's reliance on the I-card was not outrageous and NYPD did not charge plaintiff with any crime and released him.

Further, where, as here, probable cause exists, "there can be no claim for denial of either the procedural or substantive right to due process." Harris v. Cty. of Nassau, 581 F. Supp. 2d 351, 357 (E.D.N.Y. 2008); Cooper, 925 F. Supp. 2d at 612. Plaintiff's due process claims must also be dismissed as duplicative of his Fourth Amendment claims because they are premised on his stop and brief detention. See Albright v. Oliver, 510 U.S. 266, 273 (1994); Cooper, 925 F. Supp. 2d at

612-13; <u>Rockland Vending Corp. v. Creen</u>, 2009 WL 2407658, at *4 (S.D.N.Y. Aug. 4, 2009) ("a due process claim relying on the same facts as a false imprisonment claim cannot be sustained"); <u>Jean v. Cty. of Nassau</u>, 2020 WL 1244786, at *12 (E.D.N.Y. Mar. 16, 2020); <u>Farag v. United States</u>, 587 F. Supp. 2d 436, 450 n.22 (E.D.N.Y. 2008).

**Equal protection**

"[T]o state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of race." <u>Miller v. Terrillion</u>, 391 F. Supp. 3d 217, 224 (E.D.N.Y. 2019).  In asserting a claim of racial profiling or selective prosecution based on race, plaintiff "must plausibly plead and prove (1) that the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.  <u>Id.</u> at 225-26 (quoting <u>Freedom Holdings, Inc. v. Spitzer</u>, 357 F.3d 205, 234 (2d Cir. 2004)).  "This sort of claim requires a showing that similarly situated individuals of a different race were not prosecuted."  <u>Id.</u> at 225; <u>Prasad v. City of N.Y.</u>, 2009 WL 1119412, at *4 (S.D.N.Y. Apr. 24, 2009).  "Conclusory allegations of selective treatment are insufficient to state an equal protection claim." <u>Okoh v. Sullivan</u>, 2011 WL 672420, at *4 (S.D.N.Y. Feb. 24, 2011), <u>aff'd</u>, 441 F. App'x 813, 814 (2d Cir. 2011); <u>Jean</u>, 2020 WL 1244786, at *12; <u>Chandrapaul v. City Univ. of N.Y.</u>, 2016 WL 1611468, at *23 (E.D.N.Y. Apr. 20, 2016) ("allegations of discrimination under the Equal Protection Clause 'require that intentional discrimination be alleged in a non-conclusory fashion'") (quoting <u>Clyburn v. Shields</u>, 33 F. App'x 552, 555 (2d Cir. 2002)).  Other than stating he is African-American, the "[allegation] cupboard here . . . is bare, containing no information

concerning disparate treatment of similarly situated individuals or any other facts suggesting selective prosecution." Miller, 391 F. Supp. 3d at 226. This claim must, therefore, be dismissed.

## Failure to Intervene

First, as already argued, plaintiff failed to allege a plausible underlying claim and there is no failure to intervene absent a constitutional violation. Rubio v. City of New York, 2005 WL 1072713, at *6 (E.D.N.Y. Apr. 22, 2005). Second, an officer cannot be liable for failure to intervene where he is also alleged to have been a direct participant in the constitutional violation. See Figueroa v. Mazza, 59 F. Supp. 3d 481, 489-90 (E.D.N.Y. 2014); Jackson v. City of New York, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013). Since plaintiff claims Det. Kane (and Officers Moe and Poe) directly participated in the alleged violations, he cannot be liable for failure to intervene.

## Supervisory Liability

Plaintiff's theory of supervisory liability for failure to train/screen/supervise/discipline should also be dismissed absent an underlying violation. Bastuk v. Cty. of Monroe, 628 F. App'x 4, 6-7 (2d Cir. 2015).

Also, a defendant cannot be held liable under § 1983 merely because he holds a supervisory position. Valverde v. Folks, 2020 WL 5849515, at *4 (S.D.N.Y. Sept. 30, 2020). Mere knowledge of a subordinate's violation does not subject a supervisor to liability, rather personal involvement must be alleged. Id. at *4-5 (citing Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). Personal involvement can be shown by his 1) direct participation in the alleged violation; 2) failure to remedy a wrong after being informed of the violation; 3) creation of a policy that allowed the violation to occur; 4) gross negligence in supervising the offending subordinate; or 5) exhibiting deliberate indifference to the rights of others by failing to act on information indicating

the occurrence of a violation. Ruggiero v. Way, 2020 WL 5126112, at * 10 (S.D.N.Y. Aug. 31, 2020) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[12] It is insufficient to merely recite the elements of supervisory liability. Id. (citing cases). Indeed, "conclusory, unsupported allegations of gross negligence or the existence of a policy are simply insufficient to establish liability of supervisory . . . officials under § 1983." Id. (citation omitted). Here, plaintiff's purely conclusory allegations of failing to remedy subordinate wrongs, adopt proper procedures, and train, screen, supervise, or discipline subordinates, without any supporting facts, are based only on the subject incident and, thus, fail to state a plausible claim for supervisory liability. (Ex. A ¶ 56.)

## POINT IV

### PLAINTIFF FAILED TO STATE ANY CLAIM AGAINST DEFENDANTS UNDER STATE LAW

Plaintiff's panoply of state law claims should also be dismissed for failure to state a plausible claim.

### NY State Constitution

New York courts imply a private right of action under the State constitution only where there is no alternative remedy under federal or common law. Flores v. City of Mount Vernon, 41 F. Supp. 2d 439, 446-47 (S.D.N.Y. 1999); Felmine v. City of New York, 2012 WL 1999863, at *6 (E.D.N.Y. June 4, 2012). New York Courts generally interpret the due process protections of the State constitution to be coextensive with federal due process protections. McAdam v. Suffolk Cty. Police Dep't, 2017 WL 3206322, at *6 (E.D.N.Y. July 26, 2017) (citing cases). Thus, plaintiff's due process claim under State law is dismissible for the same reasons as its federal counterpart.

However, because the State constitution can sometimes be more protective than the Fourth Amendment, to state a claim under Article 1, section 12, plaintiff must allege a constitutional

---

[12] There is a split in authority on whether all five factors survived Iqbal, but it makes no difference here as plaintiff failed to meet the Colon standard. Valverde, 2020 WL 5849515, at *5 n.2.

injury that is not recognized under the Fourth Amendment.  Davis v. City of New York, 959 F. Supp. 2d 324, 368 (S.D.N.Y. 2013).  Plaintiff alleges only that he was unlawfully stopped, searched, and detained, which is covered by the Fourth Amendment and requires dismissal of the state law claim.  Id.

Plaintiff's common law false arrest claim is analyzed the same as the federal version and should be dismissed for the same reasons.  Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). In the event plaintiff has stated a claim under federal or common law, any state constitutional claims must be dismissed.

**Negligence**

Plaintiff cannot have a negligence claim based on intentional acts.  "Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."  Cabral v. City of New York, 2014 WL 4636433, at *12 (S.D.N.Y. Sept. 17, 2014) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); Oteri v. Vill. of Pelham, 100 A.D.3d 725, 726 (2d Dep't 2012) ("[O]nce intentional offensive conduct has been established, the actor is liable for assault and not negligence."); Medina v. City of New York, 102 A.D.3d 101, 108 (1st Dep't 2012) ("The cause of action alleging negligence, including negligent hiring, retention, and training, must be dismissed because no cause of action for negligent investigation lies in New York.").  Thus, the negligence claim is inappropriate.  Probable cause created by the I-card also precludes this claim.  Gray v. Weselmann, 737 F. App'x 30, 33 (2d Cir. 2018).

**Negligent Hiring/Screening/Retention/Supervision/Training**

"To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside

the scope of [his] employment." <u>Velez v. City of New York</u>, 730 F.3d 128, 136-37 (2d Cir. 2013).

Plaintiff's admission that Det. Kane (and Officers Moe and Poe) were acting "in the course and

scope of their duties and functions as officers" of NRPD at the time of the incident requires

dismissal of this claim.  (Ex. A ¶¶ 12-13.)  Moreover, the complaint is bereft of any facts showing

New Rochelle knew or should have known of its employees' propensity for the conduct which

caused the injury as required to state a claim.  <u>Ellis v. Gannon</u>, 2011 WL 5513184, at *6 (E.D.N.Y.

Nov. 10, 2011); <u>Jackson v. N.Y. Univ. Downtown Hosp.</u>, 69 A.D.3d 801, 801 (2d Dep't 2010).

Additionally, New Rochelle is immune for the discretionary acts of its police officers such

as apprehending suspects.  <u>Bradway v. Town of Southampton</u>, 826 F. Supp. 2d 458, 476 (E.D.N.Y.

2011) (<u>quoting</u> <u>Bancroft v. City of Mount Vernon</u>, 672 F. Supp. 2d 391, 408 (S.D.N.Y. 2009));

<u>Haddock v. City of New York</u>, 75 N.Y.2d 478, 484 (1990) (<u>citing</u> <u>Tango v. Tulevich</u>, 61 N.Y.2d

34, 40 (1983)); <u>McLean v. City of New York</u>, 12 N.Y.3d 194, 203 (2009).  Further, "when official

action involves the exercise of discretion, the officer is not liable for the injurious consequences

of that action *even if resulting from negligence or malice . . . .*"  <u>Tango</u>, 61 N.Y.2d at 40 (emphasis

supplied).  New Rochelle is also immune for discretionary acts such as

hiring/training/supervision/screening/retention.  <u>Mon</u>, 78 N.Y.2d at 314; <u>Tango</u>, 61 N.Y.2d at 40;

<u>Pub. Adm'r, Bronx Cty. v. City of New York</u>, 271 A.D.2d 220, 221 (1st Dep't 2000).

**<u>Intentional Infliction of Emotional Distress</u>**

Public policy bars plaintiff's intentional infliction of emotional distress claim against New

Rochelle.  <u>Llerando-Phipps v. City of New York</u>, 390 F. Supp. 2d 372, 381 (S.D.N.Y. 2005) (<u>citing</u>

<u>Lauer v. City of New York</u>, 240 A.D.2d 543, 544 (2d Dep't 1997)).  Probable cause created by the

I-card also bars this claim against its officers.  <u>Gray</u>, 737 F. App'x at 33; <u>D'Angelo-Fenton v.</u>

<u>Town of Carmel</u>, 470 F. Supp. 2d 387, 399-400 (S.D.N.Y. 2007).

Additionally, plaintiff failed to factually allege any of the required elements, including "extreme and outrageous conduct," severe emotional distress, or intent by Det. Kane necessary to sustain this claim. Howell v. N.Y. Post Co., Inc., 81 N.Y.2d 115, 121 (1993); Gray, 737 F. App'x at 33 ("because there was probable cause to arrest, detain, and prosecute . . . its conduct [was not] extreme or outrageous"); Deanda v. Hicks, 137 F. Supp. 3d 543, 581 (S.D.N.Y. 2015). Det. Kane's admitted reliance on an NYPD-issued I-card did not amount to the required extreme or outrageous conduct. Regeda v. City of New York, 2012 WL 7157703, at *13 (E.D.N.Y. Sept. 7, 2012). Nor can plaintiff base this claim on his lawful arrest. Ladoucier v. City of New York, 2011 WL 2206735, at *6 (S.D.N.Y. June 6, 2011); Csoka v. Cty. of Suffolk, 85 F. Supp. 2d 117, 123 (E.D.N.Y. 2000). This claim also cannot exist as plaintiff's allegations "fall within the ambit of traditional tort liability" and are covered by his other claims. Jackson v. City of New York, 2014 WL 1010785, at *14 (E.D.N.Y. Mar. 17, 2014). Since plaintiff asserts a false arrest claim based on the same conduct, this claim is barred as a matter of law. Regeda, 2012 WL 7157703, at *13 (IIED and NIED "are theories of recovery that are to be invoked only where other tort remedies are not available").

**Negligent Infliction of Emotional Distress**

Plaintiff's negligent infliction of emotional distress claim also fails because Det. Kane acted on probable cause. Ladoucier, 2011 WL 2206735, at *6; Csoka, 85 F. Supp. 2d at 123. This claim also fails because it is premised on intentional conduct. Regeda, 2012 WL 7157703, at *13.

Plaintiff also failed to allege "extreme and outrageous conduct" and severe emotional distress as required to state a claim. Truman v. Brown, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020). Plaintiff also failed to allege any of the "limited recognized contexts in which a claim of NIED may be viable" such as the "bystander theory," "direct duty theory," or "special circumstances theory."

Id. at 122-23.  Under the bystander theory, plaintiff must allege he was threatened with physical harm as a result of defendants' negligence and that he consequently suffered emotional injury from witnessing the death or serious bodily injury of an immediate family member.  Id. at 123.  Plaintiff makes no such allegations.  Under the direct duty theory, he must allege he suffered an emotional injury from defendant's breach of a duty specific to him which unreasonably endangered his own physical safety.  Plaintiff does not claim this either.

Finally, he did not allege "an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious," such as a hospital negligently informing an individual of the death of a parent, negligent misdiagnosis of HIV, or the mishandling of a loved one's remains.  Id. (citations omitted).  This claim, therefore, must be dismissed.

## Assault and Battery

Plaintiff's assault and battery claims seem based only on his handcuffing.  To establish an assault claim under New York law, plaintiff must show defendants placed the plaintiff in reasonable fear of imminent harmful or offensive bodily contact.  To state a claim for battery, plaintiff must show defendants intentionally caused a wrongful physical contact with the plaintiff without his consent.  Ladoucier, 2011 WL 2206735, at *6.

The right to arrest "carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham v. Connor, 490 U.S. 386, 396 (1989).  A reasonable arrest often involves handcuffing the suspect.  Jouthe v. City of New York, 2009 WL 701110, at *16 (E.D.N.Y. Mar. 10, 2009).  A lawful arrest and search incident to arrest is not an assault or battery under New York law.  Figueroa v. Mazza, 825 F.3d 89, 105 n.13 (2d Cir. 2016); Ladoucier, 2011 WL

2206735, at *6.  Since Det. Kane properly acted on the I-card, plaintiff has no assault and battery claims.

**Trespass**

Plaintiff seems to allege a trespass upon his person which is redundant of his false arrest/imprisonment claim and should be dismissed for the same reason.  See Jenkins v. City of New York, 478 F.3d 76, 88 (2d Cir. 2007) ("In New York, the action of false arrest or false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement.") (citation and internal quotation marks omitted).

**Conversion/Replevin**

Plaintiff's conversion/replevin claim appears based on removal of his boxcutter.  To state a claim, plaintiff must allege defendants intentionally and without authority, assumed or exercised control over his property, interfering with his right of possession.  Bardwil Indus. Inc. v. Kennedy, 2020 WL 2748248, at *4 (S.D.N.Y. May 27, 2020).  The two key elements are plaintiff's possessory right and defendants' dominion over the property.  Id.  A cause of action for replevin must establish "that the defendant is in possession of certain property of which the plaintiff claims to have a superior right."  Dore v. Wormley, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010).  "Demand upon, and refusal of, the person in possession of the chattel to return it [are] essential elements of a cause of action in replevin.  Id.  This claim fails because Det. Kane was authorized to remove the boxcutter during the lawful search based on the I-card.  Plaintiff also fails to allege New Rochelle is actually in possession of the boxcutter and that he demanded its return from the New Rochelle defendants, but was refused, prior to this action.  (Ex. A ¶¶ 35, 95-97.)  In fact, New Rochelle is not in possession of the item as it turned plaintiff and his property over to NYPD at the time of the incident.  (Radi Decl. ¶ 6.)

**Respondeat Superior**

Absent any plausible underlying state law claims, plaintiff's *respondeat superior* claim against New Rochelle must be dismissed.  Ikezi v. City of New York, 2017 WL 1233841, at *16 (E.D.N.Y. Mar. 31, 2017); Trivedi v. Golub, 46 A.D.3d 542, 543 (2d Dep't 2007).

**POINT V**

**THERE IS NO BASIS FOR PUNITIVE DAMAGES**

As a government entity, New Rochelle is immune from punitive damages.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Plaintiff's allegation that Det. Kane acted on an I-card that stated there was probable cause to arrest plaintiff for rape fails to reach the extremely high threshold necessary to obtain an award of punitive damages against him.  Ehrlich v. Town of Glastonbury, 348 F.3d 48, 52 (2d Cir. 2003) (requiring "evil motive or intent" or "reckless or callous indifference"); Marinaccio v. Town of Clarence, 20 N.Y.3d 506, 511 (2013) (requiring "spite or malice, or a fraudulent or evil motive").  Punitive damages should be stricken.  See Deanda, 2015 WL 5730345, at *28 (dismissing punitive damages); Tianbo Huang v. iTV Media, Inc., 79 F. Supp. 3d 458, 461 n.2 (E.D.N.Y. 2015); Fed. R. Civ. P. 12(f).[13]

---

[13] The Court should dismiss the unidentified "Moes" and "Poes" from this action for all of the above reasons. Additionally, more than six months have passed since plaintiff filed this action and he has failed to serve or even identify them despite two amended pleadings.  (ECF Doc. No. 1.)  Santos, 847 F. Supp. 2d at 578; Cooper, 925 F. Supp. 2d at 601 n.9.

## <u>Conclusion</u>

For all of the foregoing reasons, defendants City of New Rochelle and Sean Kane respectfully request that this Court grant their motion and dismiss this action against them in its entirety with prejudice, together with such other and further relief as this Court deems just, equitable, and proper.

Dated: Carle Place, New York
      November 23, 2020

SOKOLOFF STERN LLP
*Attorneys for Defendants City of*
*New Rochelle and Sean Kane*

By:    Mark A. Radi
        179 Westbury Avenue
        Carle Place, New York 11514
        (516) 334-4500
        File No. 200104